# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **MICKEY MILAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00238** |
| | ) | **Judge Aleta A. Trauger** |
| **ASCAP d/b/a THE AMERICAN** | ) | |
| **SOCIETY OF COMPOSERS,** | ) | |
| **AUTHORS & PUBLISHERS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

In his First Amended Complaint ("FAC") (Doc. No. 18), plaintiff Mickey Milam brings claims against his former employer, defendant American Society of Composers, Authors and Publishers ("ASCAP") (improperly named in the caption of the FAC as "ASCAP d/b/a The American Society of Composers, Authors & Publishers"), for discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"), and retaliation in violation of the ADA. Now before the court is ASCAP's Rule 12(b)(6) Motion to Dismiss the FAC in its entirety, for failure to state a claim for which relief may be granted. (Doc. No. 19.) For the reasons set forth herein, the motion will be denied.

## I.    STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim." Fed. R. Civ. P.

8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When presented with a Rule 12(b)(6) motion, the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## II.    FACTS ALLEGED IN THE FAC

Based on the standard set forth above, the court presumes the facts set forth in the FAC to be true. As alleged therein, Mickey Milam, a male "over the age of 40" (FAC ¶ 6), was employed directly by ASCAP as Senior Manager for Facilities and Security from November 23, 2021 until February 28, 2022. Prior to that period, he worked for ASCAP as an independent contractor for several years.

In March 2021, Milam voluntarily received his first dose of the COVID-19 vaccine. He alleges that, in response to the vaccine, he experienced permanent partial hearing loss and Bell's

palsy that caused temporary paralysis of the left side of his face.[1] He notified "ASCAP agents, including Brian Roberts and Gloria Svabenik," of his condition and impairments on multiple occasions. (FAC ¶ 12.) He was questioned by Roberts and Svabenik, among others, about his ability to do his job as a result of the hearing loss and Bell's Palsy. Milam also states that, prior to disclosing his hearing loss and Bell's palsy "and related impairments" to ASCAP, he had a positive work experience, but, after he reported these conditions, he "suffered detrimental and dramatically worse treatment from ASCAP agents and employees." (FAC ¶ 14.) The plaintiff does not explain what this worse treatment consisted of.

In November 2021, ASCAP sent an email to its employees providing notice that all employees would be expected to provide proof to Human Resources ("HR") that they had received two doses of the COVID-19 vaccine no later than February 1, 2022. An exception would be provided for employees with sincerely held religious beliefs, medical issues, or disability, but employees in these categories were required to contact the head of HR, Patty Erickson, no later than January 5, 2022 to request an accommodation and to submit any requested supporting documentation no later than January 15, 2022 to be considered for an accommodation.

Due to his reaction to his first vaccine, Milam "reached out to ASCAP and requested all necessary exemption forms for his medical provider to complete." (FAC ¶ 17.) Svabenik, his direct supervisor, told him she had discussed his concerns with Roberts. However, neither Svabenik nor "any HR agent" ever provided Milam the form for requesting an exemption or the form to be completed by his medical provider, "as requested by Plaintiff after receiving the November 2021

---

[1] Bell's palsy "is a condition that causes sudden weakness in the muscles on one side of the face. In most cases, the weakness is temporary and significantly improves over weeks. The weakness makes half of the face appear to droop. Smiles are one-sided, and the eye on the affected side resists closing." https://www.mayoclinic.org/diseases-conditions/bells-palsy/symptoms-causes/syc-20370028.

email." (FAC ¶ 18.)

Between November 2021 and January 2022, ASCAP agents continued to "express concerns" about Milam's ability to perform his job duties, in light of his "actual or perceived impairments." (*Id.*) For example, he was "facetiously questioned about whether he 'could hear' what was going on in the facility." (*Id.*)

After "[r]eceiving no response from Svabenik or HR," Milam "reached out to Patty Erickson on January 28, 2022." (FAC ¶ 19.) In this email, titled "What should I do to be in compliance with ASCAP," Milam again explained his concerns about receiving a second dose of the vaccine and "alerted ASCAP of his need for an accommodation and/or exemption from taking the 2nd dose of the vaccine." (*Id.*; *see also* Doc. No. 20-1, at 2.)

On January 29, 2022, Erickson responded, directing him to "submit an accommodation request for the exception" to the vaccine requirement and attaching to her email the ASCAP Medical Accommodation Certification Form and the Treating Healthcare Provider Accommodation Certification Form. (FAC ¶ 20; *see also* Doc. No. 20-1, at 3.) On February 4, 2022, Milam notified Erickson that he had attempted to provide the accommodation request forms to his healthcare provider, but he had just discovered that she had left the medical practice. He was having difficulty obtaining her new contact information, and he "was not sure 'which doctor [would] follow up.'" (FAC ¶ 21.) Milam never received a response to his February 4, 2022 email.

Between February 4 and February 28, 2022, no ASCAP agent contacted Milam to discuss the issues raised in his February 4 email or his request for an accommodation. In addition, no one contacted him to tell him that ASCAP had not received the accommodation forms from his medical provider. Milam therefore "presumed that his medical provider had provided the appropriate paperwork to ASCAP." (FAC ¶ 22.) During this time, no one told him he did not qualify for an

exemption or that he would have to receive the second COVID vaccine to remain employed at ASCAP.

On February 28, 2022, despite actual knowledge that the plaintiff had requested an accommodation and without discussing his request any further, ASCAP notified Milam that his employment was being terminated for failure to either be fully vaccinated or to request an exemption from the vaccination policy. At the time of his termination, ASCAP agents made comments to him about their concerns about whether he could continue to perform his job anyway, in light of his "age or perceived impairments." (FAC ¶ 26.)

Milam attempted to challenge the termination decision, informing Roberts and Erickson that he had requested an exemption and had reasonably believed his healthcare provider had returned the requested forms to ASCAP and that no one from ASCAP had ever alerted him to problems with his paperwork. He requested additional time to complete the paperwork. He also confirmed that he was able to do his job despite any actual or perceived impairments, including the hearing loss. Roberts and Erickson, as ASCAP's agents, refused to reverse the termination decision.

Following the termination call, Roberts requested that Milam "walk the premises" of ASCAP's Nashville office with him on March 1, 2022 to meet the person who would be taking Milam's position. (FAC ¶ 28.) Milam did so and perceived that the person hired to replace him was "substantially younger" than he and did not "have any perceived or known impairments." (FAC ¶ 29.)

Milam asserts that, while he was employed by ASCAP, his employer treated "substantially younger" individuals more favorably "in terms of treatment, workplace treatment and comments, scheduling, accommodations, and other issues impacting the terms of employment," but he does

not identify the ways in which younger individuals were treated more favorably than he was and cannot remember the names of any such individuals. (FAC ¶ 30.)

III.     **THE DEFENDANT'S MOTION**

ASCAP asserts that it is clear from the face of the FAC that Milam was terminated because of his failure to comply with ACAP's COVID-19 vaccine policy and that he "missed multiple deadlines to submit his accommodation request" and then "failed to submit the requested supporting documentation, leaving ASCAP with only Milam's vague and unsubstantiated word to go on." (Doc. No. 20, at 8.) In support of the Motion to Dismiss, ASCAP argues primarily that the FAC does not contain sufficient factual allegations to state plausible discrimination or retaliation claims. Regarding the ADEA claim, in particular, it asserts that the plaintiff does not actually identify his age, "does not even plead that he was at least 40 years old at the time of any allegedly discriminatory conduct" (Doc. No. 19, at 2), and does not provide facts supporting his claims that anyone made any comments related to age, treated him differently than younger individuals, or replaced him with a substantially younger individual.

Regarding the ADA discrimination claim, ASCAP argues that Milam does not plausibly plead that ASCAP failed to accommodate an "ADA-qualifying disability" or that he was terminated because of an "ADA-qualifying disability." (*Id.*) In addition, it contends that there is no dispute that Milam did not provide ASCAP with requested medical documentation to support an exemption from the vaccine policy. And finally, ASCAP argues that Milam's "botched" accommodation request cannot qualify as protected activity and that the FAC fails to allege any facts from which the court can infer a causal connection between protected activity and his termination, for purposes of the ADA retaliation claim.

Milam responds that his pleading adequately establishes claims under the ADA and ADEA. (Doc. No. 24.) In particular, he points out that, contrary to ASCAP's assertion, the FAC pleads

that he is a "male over the age of 40" (*see* FAC ¶ 6), and he now states that he was 62 years old at the time of the events in question. ASCAP's Reply largely reiterates the arguments in its Memorandum and holds the plaintiff to a standard well in excess of that required by Rule 8 and *Twombly* and *Iqbal*. It also contends that the plaintiff cannot amend his pleading by asserting in his Response brief that he is 62 years old.

## IV. ANALYSIS

### A. ADEA Discrimination Claim

Under the ADEA, employers may not terminate an individual "because of such individual's age." 29 U.S.C. § 623(a)(1). Age discrimination claims that rely on indirect evidence generally are analyzed under the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020). Under this framework, the plaintiff must first produce "evidence from which a reasonable jury could conclude that he or she established a *prima facie* case of discrimination before the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action." *Id.* (internal quotation marks and citations omitted). At that point, "the plaintiff must rebut the proffered reason by producing evidence from a which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.* (internal quotation marks and citations omitted).

A plaintiff establishes a *prima facie* case by showing that "(1) he is a member of a protected group, (2) he was qualified for the position in question, (3) his employer took an adverse employment action against him, and (4) there are circumstances that support an inference of discrimination." *Id.* at 808 (internal quotation marks and citation omitted). Such circumstances may include replacing the plaintiff with a "significantly younger" employee. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012)

Importantly, the Supreme Court has "never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002); *see also Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, at *3 (6th Cir. Aug. 2, 2022) (confirming that this holding "remains good law after the Supreme Court's decisions in *Twombly* and *Iqbal*"). Even if he were required to plead the elements of a *prima facie* case, however, the court finds that the plaintiff's allegations in the FAC, construed in his favor, establish that he is a member of a protected class for purposes of an ADEA claim and that he was qualified for his job, was terminated, and was replaced by someone "significantly younger."

The plaintiff, in fact, pleads in the FAC that he is a "male over the age of 40." (FAC ¶ 6.) To the extent the defendant takes exception to the plaintiff's failure to specify that he was over the age of 40 at the time of the events in question, the court finds it reasonable to infer from the FAC that the plaintiff was over 40 at the time of the events in question—particularly in light of his other allegations regarding comments about his ability to do his job in light of his age—and that the failure to be more specific was mere oversight. The fact that the plaintiff now states that he is 62 years old serves simply to corroborate that inference.

The opinion cited by the defendant in support of its assertion that dismissal is appropriate when a plaintiff fails to plead that he belongs to a protected class is distinguishable, as the Sixth Circuit in that case affirmed dismissal on the basis that nothing in the complaint or the exhibits attached to the defendant's motion to dismiss referenced the plaintiff's age at all. *Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *5 (6th Cir. Jan. 26, 2022).

In addition, contrary to the defendant's assertion, the plaintiff was not required to plead specifically that he was replaced by someone at least six years younger. In *Grosjean v. First Energy*

*Corp.*, 349 F.3d 332 (6th Cir. 2003), the Sixth Circuit established a "bright line" rule for *proving* a case of age discrimination using indirect evidence: "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Id.* at 340. *Grosjean*, however, addressed a motion for summary judgment, and it did not establish or alter the pleading requirements for purposes of a motion to dismiss under Rule 12(b)(6).[2] Moreover, a plaintiff at the pleading stage, before conducting discovery, may not be able to establish a comparator's age with any certainty. At this point in the proceedings, the plaintiff's observation that his replacement appeared to be "substantially younger" than he (FAC ¶ 29) is sufficient to give rise to an inference that the comparator was at least six years younger.

The defendant has not established that it is entitled to dismissal of the ADEA claim. Further, to obviate the need for further quibbling over the plaintiff's age, in light of plaintiff's (unsubstantiated) assertion in his Response that he was 62 years old at the time of the alleged discrimination and the fact that the defendant undoubtedly possesses documentation confirming the plaintiff's age, the court will grant the plaintiff leave to amend his pleading to affirmatively state his age at the time of the events in question.

---

[2] Similarly, the defendant's reference to the "same-actor inference" is premature. This inference may allow a factfinder to "infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995). Even if it were clear from the pleading in this case that the same individual made the decisions to hire and fire Milam, the defendant has provided no authority for applying the same-actor inference at the pleading stage or suggesting that the same actor inference can be appropriately so applied. Even on motions for summary judgment, the Sixth Circuit has recognized that the same actor inference is not mandatory. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003) ("Although the factfinder is permitted to draw this inference, it is by no means a mandatory one, and it may be weakened by other evidence."); *accord Gaglioti v. Levin Group, Inc.*, 508 F. App'x 476, 483 (6th Cir. 2012) ("[A]s *Wexler* makes clear, the same-actor inference cannot be an independent reason to grant summary judgment where there are other disputes of material fact." (citing *Wexler*, 317 F.3d at 573–74)).

### B.   ADA Discrimination Claims

ASCAP construes the plaintiff's ADA discrimination claim as two separate causes of action merged into one: (1) a claim that ASCAP failed to reasonably accommodate the plaintiff's "actual or perceived disabilities"; and (2) a claim that he was terminated because of his actual or perceived disabilities. (Doc. No. 20, at 19–20.) It seeks dismissal of both claims on the grounds that the plaintiff has not adequately pleaded that he has an "ADA-qualifying disability," because he fails to specify the major life activity limited by his alleged impairment or to plead that his ability to work was substantially limited and cannot do so now, in the context of responding to a motion to dismiss. (Doc. No. 20, at 21.) ASCAP also argues that the ADA failure to accommodate claim must be dismissed, because the plaintiff never provided ASCAP with the requested medical documentation substantiating his requested accommodation.

#### 1.   Whether the Plaintiff Adequately Alleges a Disability

The defendant asserts that the plaintiff's Bell's palsy, being a temporary condition, does not qualify as a disability and that partial hearing loss does not qualify as a disability. It also contends that the plaintiff never identifies what "major life activity" is affected by his impairment. The cases on which the defendant relies were, for the most part, decided on summary judgment instead of on a motion to dismiss, predate the ADA Amendments Act of 2008, which substantially modified the definition of "disability" for purposes of ADA discrimination claims, or do not actually stand for the proposition for which the defendant cites them.[3]

---

[3] For instance, the defendant refers to this court's opinion in *Eachus v. Haslam*, No. 3:15-CV-944, 2016 WL 323675, at *8 (M.D. Tenn. Jan. 27, 2016), as "dismissing ADA claim where alleged disability was 'lung damage and hearing loss,'" in support of the defendant's assertion that courts have found "that alleged partial hearing loss can be insufficient to plead a disability under the ADA." (Doc. No. 20, at 26.) In *Eachus*, however, the court accepted, for purposes of the defendant's motion to dismiss, that the plaintiff had a "disability because she suffers from lung

One of the ways in which "disability" is now defined in the ADA is as a "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). The term "major life activities" is defined to include, among other things, "hearing." *Id.* § 12102(2)(A). Under the governing regulations, the term "substantially limits" is to be "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Further,

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.

*Id.* § 1630.2(j)(1)(ii). The Sixth Circuit has confirmed that, at the motion to dismiss stage, the requirement for pleading a "disability" is not difficult to meet. *See Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) ("The 'disability determination [thus is] an appropriate threshold issue but not an onerous burden for those seeking to prove discrimination under the ADA.'") (quoting 29 C.F.R. pt. 1630, App. § 1630.2(j)(1)(iv)).

In this case, the plaintiff alleges in the FAC that he has permanent "hearing loss" (FAC ¶¶ 11, 13, 14, 17), and he further described his hearing problem in an email to Patricia Erickson as "pain in the ear and sensitivity to sound" (Doc. No. 20-1, at 1). From the allegations in the FAC, it may reasonably be inferred that the plaintiff's hearing loss, pain, and sensitivity substantially

---

damage and hearing loss," but dismissed the failure to accommodate claim because the complaint otherwise failed to allege any of the other elements of that claim. *Eachus*, 2016 WL 323675, at *8.

The defendant also relies on *Williams v. Stark County Board of County Commissioners*, 7 F. App'x 441, 445 (6th Cir. 2001), which cites *Bragdon v. Abbott*, 524 U.S. 624 (1998), in support of the definition of "disability" under 42 U.S.C. § 12102(1), both of which were issued well before the 2008 ADA Amendments Act.

limits the plaintiff in the major life activity of hearing, "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Although it is also clear from the regulation that "not every impairment will constitute a disability within the meaning of this section," *id.*, at the pleading stage, this is sufficient.

Moreover, the defendant's motion does not even address that part of the ADA defining the term disability as "being regarded as" having an impairment, which may apply if the plaintiff establishes that he has been subjected to an adverse employment action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(1)(C) & (3)(A). The FAC gives rise to a reasonable inference that the plaintiff was "regarded as" having hearing loss that interfered with his ability to do his job, even though, according to the plaintiff, it did not, when it alleges that ASCAP "expressed concerns about Plaintiff's ability to do his job due to actual or perceived hearing loss." (FAC ¶ 13; *see also id.* ¶ 29 ("Plaintiff observed that the person set to replace him . . . did not have any perceived or known impairments.").)

Nor does the defendant attempt to address or identify the "disability" the plaintiff alleges and for which he claims to need an accommodation—that is, his inability to tolerate the COVID-19 vaccine without suffering severe side effects. Neither party addresses whether this condition qualifies as a disability for purposes of an ADA discrimination claim or failure to accommodate claim, so the court, for now, presumes that it does.

In short, insofar as the defendant's Motion to Dismiss the ADA discrimination claim or failure to accommodate claim is premised solely on the plaintiff's purported failure to adequately allege an "ADA-qualifying disability," the motion must be denied.

### 2. *Failure to Accommodate*

ASCAP argues that, insofar as the plaintiff successfully pleads that he has a disability, [4] his failure to accommodate claim fails because, even if he sufficiently pleads a disability, he never provided ASCAP with requested medical documentation that he had a disability or required an accommodation. (Doc. No. 20, at 27.) It asserts that it is entitled to request and receive medical documentation confirming Milam's alleged disability and need for an accommodation and that he admittedly failed to provide it. (*Id.* at 28.) According to ASCAP, Milam "pleads that he contacted Erickson for the first time on January 28, 2022 to request an accommodation," that Erickson responded by providing the necessary forms, and that it is undisputed that Milam did not return the forms from his healthcare provider. (Doc. No. 20, at 11, 28.)

At this stage, however, the court must presume to be true the plaintiff's allegations that he notified the defendant of his need for an accommodation, that he made a timely request to "HR" "after receiving the November 2021 email" for the necessary forms but did not receive them from the defendant in a timely fashion, and then, when he did finally receive the necessary documents and attempted to have the Treating Healthcare Provider Accommodation Certification Form completed by his medical provider, through no fault of his own, he was unable to get his treating provider to return the form in a timely fashion. He alleges that he notified ASCAP that he was having difficulty contacting his medical provider and that he was not sure which doctor would "follow up." (FAC ¶ 21.) The plaintiff alleges that he expected his doctor to mail the required form to ASCAP, and, when he did not hear otherwise from ASCAP, "presumed" that she had done so.

---

[4] Again, the parties do not attempt to define the plaintiff's disability for purposes of his failure to accommodate claim. As suggested above, the court presumes that the disability in question is a medical condition that makes the plaintiff unable to tolerate the COVID-19 vaccine, as compared to the general population. The court expresses no opinion as to whether this condition qualifies as a disability under the ADA.

(*Id.* ¶¶ 21.) Rather than contact him to inquire about his paperwork, ASCAP simply notified the plaintiff that he would be fired. The plaintiff, at that point, requested that he be granted a little extra time within which to return the requested forms, which the defendant failed to discuss with him and, instead, moved forward with the termination.

"Once an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018). "[T]he interactive process is mandatory, and both parties have a duty to participate in good faith." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). "If the interactive process was triggered but not successfully resolved, 'courts should attempt to isolate the cause of the breakdown and then assign responsibility.'" *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 421 (6th Cir. 2020) (quoting *Kleiber*, 485 F.3d at 871). A plaintiff who does not provide requested information does not "participate in the interactive process in good faith" and then "cannot claim that [the] defendant failed to accommodate her under the ADA." *Harvey v. Am.'s Collectibles Network, Inc.*, No. 3:09-CV-523, 2011 WL 182864, at *8 (E.D. Tenn. Jan. 20, 2011).

Here, however, for purposes of the Motion to Dismiss, the court must consider to be true the plaintiff's allegations that he was attempting to comply with the request for documentation and that the defendant failed to communicate with him about not having received the requested documentation and then denied his request for additional time to comply with the defendant's request. That is, at this stage, it is not clear which party is responsible for the breakdown in the interactive process. *See, e.g.*, *Fisher*, 951 F.3d 422 (finding a material factual dispute as to whether defendant bore responsibility for failing to respond to the plaintiff's "renewed requests for accommodation"). The plaintiff's allegations, if true, give rise to a reasonable inference that the defendant is responsible for the breakdown and, therefore, potentially liable for failure to

accommodate.

The cases cited by the defendant do not compel a different result. In *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 813 (6th Cir. 2020), for example, the court indeed held that "employers are entitled to medical documentation confirming the employee's disability and need for accommodation. *Id.* at 813 (6th Cir. 2020) (citing *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000)). In *Tchankpa*, however, the court affirmed summary judgment for the defendant where the defendant "invoked [its] right" to request medical documentation in early 2013, but the plaintiff did not provide *any* medical documentation until nine or ten months later, in October 2013, and the documentation he finally provided did not substantiate his requested accommodation. *Id.* In addition, the plaintiff himself resigned "before completing negotiations over his accommodation." *Id.* at 814. *Tchankpa* is hardly on point with this case, as the plaintiff was accorded several months to provide the requested documentation. Nor is *Kennedy*, in which the plaintiff produced a doctor's note that stated only that the plaintiff had a "problem," which was "clearly insufficient to establish that [he] had a disability that required reasonable accommodation." *Kennedy*, 215 F.3d at 656 (6th Cir. 2000). The defendant thereafter made "numerous attempts" over the course of several months to "acquire medical documentation" of the plaintiff's condition, but the plaintiff "persistently refused to cooperate," including by failing to show up for two different independent medical examinations scheduled by the employer. *Id.* Under these circumstances, the defendant was entitled to summary judgment on the plaintiff's ADA claim.

This case has not reached the summary judgment stage, and the plaintiff's pleading establishes questions of fact as to the plaintiff's reasonableness in complying with the defendant's requests for medical documentation and the defendant's reasonableness in firing him without

granting him additional time to comply. Accordingly, the Motion to Dismiss the ADA failure to accommodate claims will also be denied.

### C.    ADA Retaliation Claim

ADA retaliation claims, at the summary judgment stage at least,[5] are likewise assessed under the *McDonnell Douglas* framework. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). A *prima facie* case of ADA retaliation "requires a showing that (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." "Establishing a *prima facie* case of retaliation is a 'low hurdle.'" *Id.* (citing *Gribcheck v. Runyon*, 245 F.3d 547, 551 (6th Cir. 2001)). Requesting an accommodation because of a disability is protected activity under the ADA. *Id.*

ASCAP asserts that the ADA retaliation claim should be denied, because "[m]ere conclusory assertions of retaliation are insufficient." (Doc. No. 20, at 29.) It argues that the plaintiff's "botched accommodation request" should not qualify as protected activity because it was not "reasonable." (*Id.* at 29, 30.) The court is not persuaded. If true, the plaintiff's allegations suggest that the defendant was unreasonable in refusing to grant the plaintiff extra time to return his medical documentation.

Finally, as for the defendant's contention that the plaintiff's allegations fail to establish a causal connection, the very close proximity in time between the plaintiff's requesting an accommodation and his termination constitutes circumstantial evidence of a causal connection, at this juncture at least. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)

---

[5] Again, a complete analysis of a *prima facie* case under the McDonnell Douglas framework is "premature" at the motion-to-dismiss stage. *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009).

("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."); *see also Rogers v. Henry Hord Health Sys.*, 897 F.3d 763, 776 (6th Cir. 2018) (finding nine weeks between protected activity and adverse action "sufficient temporal proximity to establish a causal connection").

In short, the defendant is not entitled to dismissal of this claim either.

## V. CONCLUSION

For the reasons set forth herein, the defendant's Motion to Dismiss (Doc. No. 19) will be denied. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge